UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

JACK DARNELL HENDRICKS,

                    Petitioner,                        Case No. 1:12-cv-897

v.                                              Honorable Gordon J. Quist

MARY BERGHUIS,

                    Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Jack Darnell Hicks is serving a term of 6 to 25 years, imposed by the Muskegon County Circuit Court on January 29, 2010, after a judge convicted him of breaking and entering a building with intent to commit larceny, MICH. COMP. LAWS § 750.110.  In his *pro se* petition, Petitioner raises two grounds for relief, as follows:

    I.        [PETITIONER] IS ENTITLED TO A NEW TRIAL WHERE THERE WAS INSUFFICIENT EVIDENCE TO FIND FOR THE CONVICTION.

    II.      [PETITIONER] IS ENTITLED TO A NEW TRIAL WHERE THE COURT DENIED [HIS] REQUEST FOR A [CONTINUANCE.]

(Pet., docket #1, Page ID##6-7.)

Respondent has filed an answer to the petition (docket #12) stating that the grounds should be denied because they are without merit.  Upon review and applying the AEDPA standards, I find that the grounds presented are without merit.  Accordingly, I recommend that the petition be denied.

**Procedural History**

**A.       Trial Court Proceedings**

The state prosecution arose from the theft of several laptop computers from Orchard View High School in Muskegon, Michigan in the month of July 2009.  The owner of a pawn shop in the vicinity purchased a laptop from Petitioner and later discovered that it was a school computer. He called the police and the police informed the school.  The school confirmed that seven of its computers were missing.  Approximately one week later, Petitioner was found inside another school with marijuana in his possession, for which he was charged with possession of marijuana on school property.[1]  In the case at issue, Petitioner was charged with breaking and entering a building to commit a larceny, MICH. COMP. LAWS § 750.110, "on or about" July 8, 2009.  (Compl., docket #26-1, Page ID#140.)   The prosecutor also filed a supplemental information charging Petitioner as a habitual offender, fourth offense, MICH. COMP. LAWS § 769.12.

At a pre-trial hearing on September 22, 2009, Petitioner's appointed counsel informed the court that Petitioner wished to represent himself; he did not want to be represented by counsel. (9/22/2009 Hr'g Tr. 3, docket #14.)  After explaining the risks of self-representation, and confirming that Petitioner did not want counsel, the court granted Petitioner's request.  At another hearing on October 7, 2009, the court offered Petitioner the option of having counsel appointed for him in an advisory or standby role.  (10/7/2009 Hr'g Tr. 4, docket #15.)  Petitioner accepted this offer.  (*Id.* at 5.)

Another hearing was held on October 14, 2009, the day before trial was scheduled to begin.  Petitioner asked the Court to adjourn the trial so that he could obtain a subpoena for

---

[1]Petitioner was convicted of the marijuana offense in a separate criminal case; that conviction is not at issue in this action.

witnesses to testify in his defense.  (10/14/2009 Hr'g Tr. 5, docket #16.)  According to Petitioner, his niece and uncles would testify that he was not at the pawn shop on July 13 or 14, 2009, because he was at his aunt's house for the entire day.  (*Id.* at 5-6.)  Petitioner also alluded to the fact that he "was in jail on the 14th."  (*Id.* at 5.)  The prosecutor objected that Petitioner appeared to be raising an alibi defense, but he had not filed a notice of his intent to do so.  Nevertheless, the court granted the motion, and Petitioner's advisory counsel agreed to send out the subpoenas.  (*Id.* at 12, 15.)

At the next hearing, on November 23, 2009, the court considered a motion by Petitioner to hold a suppression hearing.  (11/23/2009 Hr'g Tr. 3, docket #17.)  In support of his motion, Petitioner stated that he was not at the pawn shop on July 13 or 14, 2009, because he was in jail.  (*Id.* at 4.)  He had been arrested on July 8, 2009, and was in jail on July 13 and 14.  (*Id.*)  The court explained that his assertions were factual matters for the jury to determine.  (*Id.* at 9.)  Petitioner asked for the case to be dismissed, but the court denied his request.  (*Id.* at 17.)  Petitioner also asked for a bench trial instead of a jury trial; the court granted this request.  (*Id.* at 27.)

On December 16, 2009, the new trial date, the court considered several motions filed by Petitioner.  (Trial Tr. 3, docket #18.)  First, Petitioner asked for his advisory counsel to represent him; the court granted this request.  In another motion, which was filed the day before, Petitioner asked the court to have his parole officer come to his "motion hearing" (i.e., trial) to confirm that Petitioner was in jail on July 8, 2009.  (*Id.* at 5, 7, 9.)  The prosecutor responded that she contacted the parole officer identified in Petitioner's motion, who stated that a different officer was assigned to Petitioner.  (*Id.* at 6.)  The prosecutor attempted to contact the other officer, but she did not receive a response.  The prosecutor indicated that she would not object to an adjournment because she wanted to add an additional witness and she would benefit because she was having trouble

- 3 -

obtaining a power cord for a laptop computer that she wanted to submit into evidence.  (*Id.* at 7.) The court declined to adjourn the case to permit a further attempt to obtain the presence of Petitioner's parole officer as a witness, noting Petitioner's "very late notice" and the fact that Petitioner did not give the correct name of his parole officer.  (*Id.* at 10.)  As for the issue with the power cord, the court noted that it wanted the proceedings to continue, but it allowed an adjournment until that afternoon.  (*Id.* at 15.)

Petitioner also moved to suppress statements by the "manager" of the pawn shop because the manager allegedly knew that the laptop was stolen when he purchased it, and should have called the police at that time.  (*Id.*)  The court denied this motion.  (*Id.* at 10-11.)

The prosecutor moved to amend the felony information to state that Petitioner committed the offense sometime within a range of dates in July and August 2009, instead of July 8, 2009.  (*Id.* at 11-12; *see also* Am. Information, docket #26-1, Page ID#139.)  Petitioner's counsel objected that Petitioner would be prejudiced because the amendment undermined his defense that he was that he was in jail at the time of the charged offense.  The court granted the motion to amend, noting that the time period corresponded to a police report that had been part of the record for months, and that it was Petitioner himself who gave the police the relevant dates in his statement to them.  After addressing several other issues, the court allowed the prosecution to present its case.

In her opening statements, the prosecutor referenced the fact that she brought a laptop computer for submission as evidence in the case, but she recently discovered that it was not the computer that was sold to the pawn shop, as she had originally thought.  (*Id.* at 17.)

Shawn Kandelac testified that he is a PC technician who does some work for Port City Pawn Shop, refurbishing laptops for resale.  (*Id.* at 21.)  In July 2009, he received a laptop from

the shop that contained software called "Deep Freeze." (*Id.* at 22.) In his experience, schools in the area use that software on their computers. Also, on one of the software programs, he saw the name "Orchard View." (*Id.* at 23-24.) He contacted the owner of the pawn shop to let him know that the computer may have been stolen. After Kandelac finished his work on the laptop, he returned it to the pawn shop.

Scott Britton testified that he is the owner of Port City Pawn Shop. When his business purchases an item for resale, it typically asks the seller for valid identification, matches the seller to the picture on the identification card, and then makes a copy of the card. (*Id.* at 26-27.) Britton identified Petitioner as the person who came into his shop and sold him a Dell laptop for $30.00. (*Id.* at 29.) As Petitioner was leaving the store, he told Britton that he could get more computers. (*Id.* at 33.) Britton thought that this comment was suspicious. (*Id.* at 34.) After Britton learned from Kandelac that the laptop came from a school, he set the computer aside and eventually showed it to the police. (*Id.* at 31.)

Bruce Haase testified that he is the director of facilities for Orchard View High School. (*Id.* at 40.) In the first week of August 2009, he was contacted by the Muskegon Police Department about the possibility that some computers might be missing from the school. (*Id.* at 42-43.) The school stores its computers on a cart. When Haase went to the school to check the cart, he noticed that some were missing. (*Id.* at 44.) At the time, the cart was located in the teachers' office, an area that is not open to the public. (*Id.* at 47-48.) To get from the public concourse to the teachers' office, one has to travel through three sets of doors. (*Id.* at 53-54.) Two sets of doors separate the concourse from the academic wing of the school, where the teachers' office is located, and a third set of doors separates the academic wing from the teachers' office. (*Id.* at 48, 52, 54.)

- 5 -

At least one set of doors to the academic wing automatically closes after it is opened, and during the summer, it is generally kept closed.  (*Id.* at 51-53.)  The doors that do not automatically close, including the set of doors to the teachers' office, are normally kept closed as a matter of procedure. (*Id.* at 53-54.)  According to Haase, the school affixes a unique number to each of its computers in order to keep track of them.  (*Id.* at 54.)  As of the date of trial, none of the missing computers had been recovered.  (*Id.*)

Myles Sylva testified that he works for Orchard View schools in the summer, taking care of computer networks and communication.  (*Id.* at 62.)  In early August, he received a phone call indicating that some computers at the school were missing, so he went to the high school to investigate.  When he arrived at the school, he went through the public concourse to the academic wing and then to the teachers' office (the "academic teaching pod").  (*Id.* at 63-64.)  The doors to the academic wing were closed when he arrived, and in his experience they are usually closed.  (*Id.* at 64.)  The doors to the teachers' office were also closed.  Once inside the teachers' office, he went to the closet to look at the computer cart, which is normally full of computers; he discovered that seven were missing.  (*Id.* at 64, 66.)  He called Darlene Orterry and reported to her which computers were missing.  (*Id.* at 71-72.)

Darlene Orterry testified that she works for Orchard View schools in the technology department.  (*Id.* at 73.)  In early August, Myles Sylva gave her a list of computers that were missing from the school.  (*Id.* at 73-74.)  In addition, she was given a number from a computer that was discovered at Port City Pawn Shop; she confirmed that this number was associated with a computer from the school.

- 6 -

Detective Tim Phielbar testified that he works for the Muskegon Township Police Department.  (*Id.* at 80.)  On July 30, 2009, he was told to go to Port City Pawn Shop to investigate a laptop computer.  He spoke with the owner of the shop, Scott Britton, and obtained the laptop computer and a pawn slip.  (*Id.*)  Phielbar noted Petitioner's name on the pawn slip and tried to locate him.  On August 6, 2009, he interviewed Petitioner at the Muskegon County Jail.  He read Petitioner his rights under *Miranda* and Petitioner stated that he would waive those rights.  (*Id.* at 82.)  Phielbar asked Petitioner about laptops that had been stolen from the school.

At this point during the examination, the prosecutor asked Phielbar what Petitioner told him, but Petitioner's counsel objected and moved to suppress any statement by Petitioner because no evidence had been presented linking Petitioner to the stolen laptops and, thus, the "corpus del[i]cti" of the crime had not been established.  (*Id.* at 83-84.)  The court overruled the objection, noting evidence that Petitioner possessed one of the school computers and sold it to the pawn shop and that he told the owner of the shop that he could get more.  (*Id.* at 84.)

According to Detective Phielbar, Petitioner stated that, during the first week of July, he rode his bike to Orchard View High School, entered the school, and took six computers.  (*Id.* at 85.)  He did not deny selling one of them to the pawn shop.  He claimed that he sold the other computers to a man named "Butch" at a car detail shop and to his nephew.  (*Id.* at 86.)  Petitioner stated that he did all this because he had a bad crack cocaine habit.  (*Id.* at 87.)

On cross-examination, Detective Phielbar acknowledged that the computer in the courtroom was not the one that was picked up from the pawn shop, and Phielbar could not see any indication that the computer in the courtroom was one that was owned by Orchard View.  (*Id.* at 88-89.)

- 7 -

Captain Michael Poulin of the Muskegon County Sheriff's Department testified that he was at a committee meeting at a school in the North Muskegon Schools on the evening of July 14, 2009, after regular business hours.  (*Id.* at 90-91.)  During the meeting, he became aware of a "suspicious individual" outside the building.  (*Id.* at 91.)  A school official looked at the video feed from the security cameras and discovered that the individual had entered the building.  (*Id.*)  Poulin left the meeting and confronted the individual, who was "wandering" in the cafeteria area.  (*Id.* at 92-93.)  Poulin identified Petitioner as that individual.  Petitioner told Poulin that he was looking for a rest room.

After Poulin's testimony, the prosecution rested its case, and the defense elected not to present any evidence.  Petitioner's counsel argued that Petitioner should be found not guilty, because his confession could not be used against him without other evidence linking him to the crime.  The trial judge disagreed and determined that Petitioner was guilty.  The judge found that Petitioner opened at least two sets of closed doors to reach the office area of the high school building, and from there he removed six or seven computers with the intent to permanently deprive the school of them.  (*Id.* at 101.)  To prove Petitioner's guilt, the prosecution needed to show that Petitioner "broke into a building"; they satisfied their burden of proof on this issue by showing that Petitioner opened two sets of closed doors.  (*Id.* at 102-03.)  According to the court, "some force must have been used" by Petitioner to enter the building, such as "opening a door"; it did not matter whether anything was actually broken.  (*Id.* at 103.)  The prosecution also needed to show that Petitioner did so with intent to commit a larceny, which was satisfied by the evidence that Petitioner went to the "computer cart area" and took property with cash value.  (*Id.*)

- 8 -

### B.       Direct Appeal

After he was sentenced, Petitioner appealed his conviction to the Michigan Court of Appeals, raising two grounds for relief similar to those asserted in this action.  In an unpublished opinion entered on June 21, 2011, the Michigan Court of Appeals affirmed the judgment of the trial court.  (*See People v. Hendricks*, No. 297371 (Mich. Ct. App. June 21, 2011) ("MCOA Op."), docket #20.)  Petitioner then sought leave to appeal to the Michigan Supreme Court, which denied leave on November 21, 2011, because it was not persuaded that the questions presented should be reviewed by that court.

### C.       Post-conviction Relief

In January 2012, Petitioner filed a motion to dismiss his conviction on the basis that the felony complaint and warrant were defective.  The trial court denied the motion because Petitioner waived these issues by proceeding to trial.  (*See* 1/18/2012 Mich. Ct. Op. & Order, docket #22.)  Petitioner appealed that decision, and the Michigan Court of Appeals denied leave to appeal because Petitioner failed to meet the burden of establishing entitlement to relief under Rule 6.508(D) of the Michigan Court Rules.  (*People v. Hendricks*, No. 310695, order (Mich. Ct. App. Aug. 16, 2012), docket #22.)

### <u>Standard of Review</u>

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir.

2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."   28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655.  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts.  *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014); *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 132 S. Ct. 38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our

decisions but unreasonably applies it to the facts of the particular case." *Id.*  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410.  "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 784 (2011)).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA.  *See Harrington*, 131 S. Ct. at 784; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference).  The presumption, however, is not irrebuttable.  *Johnson*, 133 S. Ct. at 1096.  Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review.  *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 131 S. Ct. at 785 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation

for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

### Ground I: Insufficient Evidence

Petitioner claims that his conviction violates his right to due process because the evidence was not sufficient to convict him. *See Jackson v. Virginia*, 443 U.S. 307, 315 (1979) ("[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.'" (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). Petitioner asserts that the trial court "took excessive liberties" and "made unjustified determinations, through my alleged statement, and then stacked inference upon inference until he had satisfied all the elements of the crime charged." (Pet., docket #1, Page ID#6.) This iteration of Petitioner's claim varies somewhat from the one he raised in the state courts. On appeal from his conviction, Petitioner presented a slightly different claim before the Michigan Court of Appeals. In his appellate

brief, which was filed by his counsel, he argued that the evidence was not sufficient to convict him

because the only evidence that he broke into the school was his statement to the police; however,

the trial court could not rely upon this statement as evidence of guilt without other evidence

establishing the "corpus delicti" of the crime, citing *People v. Hampton*, 312 N.W.2d 175 (Mich. Ct.

App. 1981) and *People v. Hall*, 301 N.W.2d 903 (Mich. Ct. App. 1980). (Appellant's Br. on App.

7, docket #20.)  According to Petitioner, the other evidence presented at trial did not establish the

corpus delicti of his offense, and was not sufficient on its own to support a guilty finding; thus, the

court lacked the necessary evidence to find him guilty.  The Michigan Court of Appeals addressed

this claim as follows:

> We review a lower court's decision regarding the corpus delicti requirement
> for an abuse of discretion. *People v Burns*, 250 Mich App 436, 438; 647 NW2d 515
> (2002). A trial court does not abuse its discretion when it chooses an outcome within
> the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247,
> 269; 666 NW2d 231 (2003).

> Defendant concedes that his statement to police was admissible as an
> admission by a party-opponent, MRE 801(d)(2), but contends that the statement was
> inappropriately considered as evidence of the corpus delicti of the crime for which
> he was charged.

> The elements of breaking and entering with intent to commit larceny are:
> (1) the defendant broke into a building, (2) the defendant entered the building, and
> (3) at the time of the breaking and entering, the defendant intended to commit a
> larceny therein. *People v Cornell*, 466 Mich 335, 360-361; 646 NW2d 127 (2002).
> The corpus delicti refers to the body (corpus) of the wrong (delicti). *People v
> Williams*, 422 Mich 381, 390; 373 NW2d 567 (1985). The corpus delicti is "the loss
> sustained." *Id.* (quotation omitted). Here, the corpus delicti of the crime was that a
> person broke into the school with intent to commit a larceny.

> The general rule is "that the corpus delicti of a crime must be established by
> evidence other than a confession or admission of the accused." *People v Hamp*, 110
> Mich App 92, 96; 312 NW2d 175 (1981); *People v McMahan*, 451 Mich 543, 548;
> 548 NW2d 199 (1996). "In order to establish the corpus delicti of a crime, the
> prosecution must introduce evidence from which a trier of fact reasonably may find
> that acts constituting all the essential elements of the crime have been committed and

- 13 -

that someone's criminality was responsible for the commission of those acts." *Hamp*, 110 Mich App at 96-97. "The corpus delicti rule requires that a preponderance of direct or circumstantial evidence, independent of a defendant's inculpatory statement, establish the occurrence of a specific injury and criminal agency as the source of the injury before such statements may be admitted as evidence." *Burns*, 250 Mich App at 438.

Defendant argues that the only evidence that defendant entered the school and took computers came from his statement to the police, in which he informed them that he entered the school through unlocked doors and took the computers from the school to support a cocaine habit. However, proof of the identity of the perpetrator is not part of the corpus delicti of a crime. *People v Konrad*, 449 Mich 263, 270; 536 NW2d 517 (1995). Here, the evidence showed that seven computers were missing from a computer cart located in a non-public room that could only be accessed by going through two sets of doors, and that defendant sold a computer identified as belonging to the school to a pawn shop. This evidence satisfied the corpus delicti requirement that someone entered the private area of the school through the doors and took school computers, at least one of which defendant sold. The trial court did not abuse its discretion in considering the contents of defendant's statement to the police.

(MCOA Op. 1-2, docket #20.)

Thus, the Michigan Court of Appeals did not expressly address Petitioner's due process claim, which now focuses on whether *all* the evidence presented at trial would have been sufficient to support a guilty finding (a claim arguably not exhausted in state court); instead, the appellate court focused on whether the trial court properly applied the corpus delicti rule to consider Petitioner's confession as evidence of guilt. Nevertheless, the due process claim is clearly without merit. A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth in *Jackson*, which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from

basic facts to ultimate facts.  *Id.*   Issues of credibility may not be reviewed by the habeas court under this standard.  *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).  Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).  The standard in *Jackson* "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Considering Petitioner's statement to the police that he entered the school and took several computers, the testimony of school employees that computers were missing and that they were stored in an area that is not open to the public, and the testimony that Petitioner sold one of the missing computers to a pawn shop, it is not difficult to conclude that a rational trier of fact could find, beyond a reasonable doubt, that all elements of the offense of breaking and entering a building with intent to commit larceny were satisfied.   Thus, the due process claim is meritless.

To the extent that Petitioner claims, as he did in his appellate brief, that the evidence would have been insufficient to convict him if the state court had applied Michigan's "corpus delicti" rule to exclude his statement to the police, his claim is without merit for a different reason. The corpus delicti rule derives from state law; it is not mandated by the Constitution.  *See Chambers v. Jago*, No. 86–3913, 1987 WL 37568, at *1 (6th Cir. June 2, 1987) (corpus delicti rule not constitutionally mandated); *Templeton v. Foltz*, No. 85–1223, 1986 WL 18450, at *1 (6th Cir. 1986) (district court "correct in its conclusion that the *corpus delicti* rule is a creature of state law and does not carry with it implications of violation of federal constitutional law").  The federal courts may

- 15 -

issue a writ of habeas corpus to release a state prisoner only on the ground that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a). A petition states a claim for federal habeas relief only if it alleges that petitioner is in custody in violation of a federally guaranteed right. *See Mabry v. Johnson*, 467 U.S. 504, 507 (1984). Relief is not available for alleged errors in the admission of evidence or in other issues governed by state law. *Estelle*, 502 U.S. at 71–72. Accordingly, Petitioner's challenge to his conviction based on the corpus delicti rule is not cognizable in this action. *See Williams v. Lecureux*, No. 92–2476, 1993 WL 445090, at *1 (6th Cir. Nov. 2, 1993) (corpus delicti issue is "purely state law" question not reviewable in habeas). Parenthetically, even if it were cognizable, this court could find no fault with the Michigan Court of Appeals' resolution of the matter.

In his reply brief, Petitioner asserts that the trial court should not have relied on his statement to the police because the police reported that the case was closed, ostensibly at the time that he made his statement. However, the status of his case as reported by the police has no bearing on Petitioner's guilt. Moreover, like the previous issue, the admissibility of this statement was merely an evidentiary issue that is not cognizable in this action.

Petitioner also contends that the prosecutor acknowledged that "she did not have the evidence and could not come up with it." (Pet'r's Reply, docket #26, Page ID#96.) In addition, Detective Phielbar "confirmed that the computer in the Courtroom was not the computer [sold by Petitioner], nor did [it] match the serial number on [that] computer," and the owner of the pawn shop admitted that he sold the computer from Petitioner "before the police came to receive it." (*Id.*) None of these facts undermines Petitioner's conviction. Even if the computer presented in court was not the one that Petitioner sold to the pawn shop, the court did not need to see the stolen computer

- 16 -

to find that Petitioner stole the missing computers and sold one of them to the pawn shop. Petitioner's statement to the police and the testimony of the owner of the pawn shop were adequate to demonstrate those facts. Notwithstanding some apparent embarrassment to the prosecutor's case, the absence of the computer in the courtroom did not make Petitioner any less guilty for the theft of it.

Therefore, Ground I of the petition is meritless.

**Ground II: Denial of a Continuance**

Next, Petitioner claims that the trial court judge "abused his discretion" and deprived Petitioner of due process by refusing to delay the trial so that Petitioner could secure the presence of his parole officer to present an alibi defense. (Pet., docket #1, Page ID#8.) The state court rejected this claim, reasoning as follows:

Next, defendant argues that the trial court should have granted him a continuance at the first day of trial. We disagree. A motion for adjournment must be based on good cause. *People v Jackson*, 467 Mich 272, 276; 650 NW2d 665 (2002). In determining whether a defendant has shown good cause, the trial court should consider factors such as "'whether the defendant (1) asserted a constitutional right, (2) had a legitimate reason for asserting the right, (3) had been negligent, and (4) had requested previous adjournments.'" *People v Coy*, 258 Mich App 1, 18; 669 NW2d 831 (2003), quoting *People v Lawton*, 196 Mich App 341, 348; 492 NW2d 810 (1992). We review a trial court's decision on a motion for an adjournment or a continuance for an abuse of discretion. *People v Snider*, 239 Mich App 393, 421; 608 NW2d 502 (2000). Defendant argues that he was deprived of his ability to present a defense because his parole officer could have testified that defendant was in jail at some time around the date the prosecution alleged that the crime occurred. However, defendant told the police the date on which he committed the crime. Additionally, defendant did not move for the continuance until the day before trial and did not file a notice of an alibi defense as required under MCL 768.20(1).

Notably, defendant had received a prior continuance to arrange for witnesses to testify regarding his whereabouts on the days in question and defendant was not able to accurately identify his parole officer, the potential witness. Defendant did not

- 17 -

demonstrate the good cause or due diligence required for the trial court to grant a continuance or adjournment. MCR 2.503(C); *see Coy*, 258 Mich App at 18.

Moreover, defendant was not prejudiced by the trial court's denial of the motion for a continuance. *See Coy*, 258 Mich App at 18-19. As the trial court noted, defendant could not have been surprised about the date the prosecution alleged the crime was committed because defendant supplied that date to the police. Further, the date in the amended information was stated in the police report, a copy of which defendant possessed. No evidence indicated that defendant was incarcerated on the date on which he informed the police that he committed the crime.

(MCOA Op. 2-3, docket #20.)

"The matter of a continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel." *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). "[B]road discretion must be granted trial courts on matters of continuances"; the denial of a continuance will amount to a constitutional violation only when there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' . . . ." *Morris v. Slappy*, 461 U.S. 1, 11–12 (1983) (quoting *Ungar*, 376 U.S. at 589). In addition, to obtain relief for this claim, Petitioner must show that he was prejudiced by the omission of the evidence he would have procured had the continuance been granted. *See Mackey v. Dutton*, 217 F.3d 399, 408 (6th Cir. 2000). "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefited the defense." *Landrum v. Mitchell*, 625 F.3d 905, 928 (6th Cir. 2010) (quoting *Powell v. Collins*, 332 F.3d 376, 396 (6th Cir. 2003)).

In the circumstances of Petitioner's case, the trial court's refusal to adjourn the trial was not an "unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay[.]'" *See Morris*, 461 U.S. at 11-12. As the appellate court noted, Petitioner asked

- 18 -

for the continuance at the very last minute, on the day before trial. Moreover, the trial court had already granted Petitioner's request to delay the trial so that he could secure the testimony of alibi witnesses. On October 14, 2009, approximately two months before his trial started, Petitioner requested an adjournment to subpoena relatives who would testify that he was not at the pawn shop on July 13 or 14. At the same hearing, he alluded to the fact that he was in jail in July, on one or more of the dates relevant to the charge. (*See* 10/14/2009 Hr'g Tr. 5, docket #16.) Thus, for at least two months, he was aware that his confinement in jail might be relevant to his defense. He had more than ample opportunity during that time period to secure the presence of his parole officer as a witness; however, there is no indication that he attempted to do so until the last minute. Indeed, when he submitted his request, he did not even have the correct name of the person whom he believed would provide his alibi.

In his reply brief, Petitioner contends that the trial court should have granted an adjournment because he was not negligent in pursuing his rights and was not attempting to delay the trial. Instead, he was attempting to comply "with the requirements as he saw them to be." (Reply, docket #26, Page ID#97.) However, Petitioner does not explain why he waited as long as he did to attempt to secure the testimony of the parole officer. To the extent that he misunderstood the "requirements" for obtaining a subpoena, Petitioner voluntarily chose to represent himself before trial. In doing so, he accepted sole responsibility for his trial preparation and any risk that his preparation would be impaired by his misunderstanding of criminal procedure. His advisory counsel did agree, at one of the pre-trial hearings, to assist with contacting Petitioner's relatives, but there is no indication that Petitioner ever sought assistance to obtain the testimony of his parole officer. Consequently, none of Petitioner's assertions undermines the state court's decision. In short, the

court of appeals' decision regarding the denial of a continuance was not contrary to, or an unreasonable application of, clearly established federal law, nor was it an unreasonable determination of the facts.

Petitioner also contends that the trial court improperly allowed the prosecutor to amend the information "to include a time period that the alleged break-in occurred," but he does not identify any error in the conclusion by the court of appeals that he failed to show prejudice. (*See* Pet'r's Reply, docket #26, Page ID#96.)   Before trial, Petitioner's attorney argued that the amendment would prevent Petitioner from asserting an alibi defense, but as Detective Phielbar testified, Petitioner told the police that he stole the computers during the first week of July. Petitioner would have been aware of this statement before trial, and even if he did not make the statement, he was aware of Detective Phielbar's police report.   Thus, even before the amendment, Petitioner was aware of the time period for which he needed to have an alibi.   Consequently, as the state court held, there was no evidence of prejudice to Petitioner.

Petitioner also contends (for the first time in his reply brief) that his case should have been dismissed by the trial court for lack of jurisdiction due to defects in the felony complaint and warrant.   However, the state court found that Petitioner waived any objection to the complaint and warrant as a matter of state law.   The determination of whether a state court is vested with jurisdiction over a criminal case is a function of the state courts, not the federal courts.   *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976).   A federal habeas court does not re-examine determinations by a state court on issues of state law.   *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

Petitioner raises several other issues for the first time in his reply brief: (1) the trial judge should not have presided over the trial because he knew that he would be on medical leave;

(2) Petitioner was not arraigned within 72 hours (of his arrest); and (3) the trial court improperly denied Petitioner's motion to dismiss the case because Petitioner was representing himself at the time.  (Pet'r's Reply, docket #26, PageID##96-99.)  These issues are not properly before the Court because they were not raised in the petition.  It is well settled that a petitioner should not raise issues for the first time in a reply brief, even in a § 2254 proceeding.  *See, e.g.*, *Murphy v. Ohio*, 551 F.3d. 485, 502 (6th Cir. 2009); *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005) (a district court may decline to review a claim that the petitioner raises for the first time in its traverse).  Thus, I decline to consider them.  *See Murphy*, 551 F.3d. at 502; *Tyler*, 416 F.3d at 504.

### Recommended Disposition

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied.


Dated:  April 8, 2015                                    /s/ Hugh W. Brenneman, Jr.
                                                         HUGH W. BRENNEMAN, JR.
                                                         United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).